**In re PROCESSING TAX CASE, and 43 other cases.**

**No. 518.**

District Court, W. D. Texas, Austin Division. Dec. 4, 1935.

Birkhead, Beckmann, Stanard & Vance, of San Antonio, Tex., McCormick, Bromberg, Leftwich & Carrington, of Dallas, Tex., Fulbright, Crooker & Freeman, of Houston, Tex., Turney, Burges, Culwell & Pollard, of El Paso, Tex., Andrews, Kelley, Kurth & Campbell, of Houston, Tex., and George M. Mayer, of San Antonio, Tex., for complainants.

W. R. Smith, Jr., Dist. Atty., and Henry W. Moursund, Ass't Dist. Atty., both of San Antonio, Tex., and Wm. C. Jennings, Sp. Asst. to the Atty. Gen., for respondents.

McMILLAN, District Judge.

In all of these cases preliminary injunctions have been granted restraining the collector from collecting these so-called processing taxes, conditioned upon the complainant's depositing, subject to the orders of the court, sums in cash sufficient to insure the government in the collection of its impositions if the act is finally held to be valid.

The respondent now moves to dissolve these interlocutory injunctions and dismiss the bills. In support of his motion, two grounds only are urged at the present time. He asserts, first, that by reason of section 3224 of the Revised Statutes (26 U.S.C.A. § 1543) and section 21 (a) of the Agricultural Adjustment Act as amended (7 U.S. C.A. § 623 (a) the court is without jurisdiction to entertain these suits; and, second, that section 21 (d) of the Agricultural

Adjustment Act as amended (7 U.S.C.A. § 623(d) affords to complainants a legal remedy of such character as to preclude an appeal to equity.

The cases have been thoroughly argued and briefed in so far as these two propositions are concerned by counsel for all parties. The court has been furnished with a great number of decisions recently rendered by the various federal District Courts and United States Circuit Courts of Appeal involving and covering the precise questions here presented. The decisions are in hopeless conflict, though the weight of authority, as it now stands, tends to support the equitable jurisdiction of the courts. The Circuit Court of Appeals for the Fifth Circuit in Rickert Rice Milling Company, Inc. v. Fontenot, 79 F.(2d) 700, has by a recent opinion per curiam indicated its opinion that the taxpayer has an adequate remedy at law and that the provisions of the act as amended deprive the court of jurisdiction to grant injunctive relief. A writ has been recently granted in this case and companion cases by the Supreme Court of the United States, the Supreme Court at the same time granting an injunction pending appeal (56 S.Ct. 249, 250, 251, 80 L.Ed. ——).

So much has been written by the various courts with regard to the two matters at issue here that it would be a useless task for this court to attempt at any great length to add anything further to the discussion. However, for the purpose of the record, in so far as these cases are concerned, it is probably proper for the court to indicate as briefly as possible the principles which actuate it in denying these preliminary motions to dissolve the injunctions and dismiss the bills.

■ The right of the Congress within constitutional limits to give, withhold, or restrict jurisdiction so far as District Courts are concerned appears to be settled by such decisions as Kline v. Burke Construction Company, 260 U.S. 226, 43 S.Ct. 79, 67 L. Ed. 226, 24 A.L.R. 1077, and others unnecessary to cite. However, the intention of the Congress to take from the District Courts the powers ordinarily inherent therein should and must be clearly and unequivocally expressed. The very broad provisions of section 3224 (26 U.S.C.A. § 1543) were early held to constitute no absolute bar to tax injunction suits where extraordinary and unusual circumstances prevail. Miller v. Standard Nut Margarine

Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422; Hill v. Wallace, 259 U.S. 44, 42 S. Ct. 453, 66 L.Ed. 822. Section 21 (a) of the Agricultural Adjustment Act as amended is couched in very much the same language as the earlier statute set out in section 3224, but if it should be held to be more positive and specific in its provisions, the fact still remains that it must be applied and construed in pari materia with the remainder of the act. Congress at the time it adopted this section 21 (a) having as its apparent purpose the withdrawal of equity jurisdiction in so far as the imposts provided for by the act were concerned, contemporaneously adopted section 21 (d) which purports to give to the taxpayer his remedy at law. It is certainly, to say the least, fair to assume that Congress would never have taken from the taxpayer the right to invoke the equitable powers of the District Courts if it had not at the same time intended to afford him some adequate means of redress through other channels.

Accordingly, if it should be found that the administrative remedy set up by section 21(d) is entirely inadequate and furnishes the taxpayer no relief, as contended by complainants, then by any fair judicial construction the two provisions of the statute passed at the same time, should be held to be an integral part of each other and so interdependent as to fall together. To hold otherwise would be to impute to Congress the intention to levy upon the taxpayer an exaction which might be found unconstitutional, and yet leave him with no remedy, either legal or equitable. If such is the case, any character of exaction could be imposed by the simple device of labeling the demand a tax and a citizen could be deprived of his property without any forum in which his grievance could be heard. That indeed would be an end to all constitutional government as it has heretofore been conceived to exist. A similar situation was passed on by the Supreme Court in the Lynch Case (Lynch v. U. S.), 292 U.S. 571, 54 S.Ct. 840, 846, 78 L.Ed. 1434. There the Economy Act of March 20, 1933, title 1 (38 U.S.C.A. § 70 et seq.), which attempted to repeal all laws granting or pertaining to yearly renewable term insurance was held to be invalid because offending against the Fifth Amendment. However, contended the government, despite the invalidity of the repealing act there was no constitutional inhibition against the United States withdrawing the right to sue on these war risk policies, and

the repealing clause was broad enough to repeal the prior remedy statutes. To this the Supreme Court answered that while the sovereign had the undoubted right to exempt itself from suit it would not be held that the Congress had done so by the Economy Act; that it would not be assumed that Congress would have resorted to the device of withdrawing the legal remedy from beneficiaries of outstanding policies if it had realized that they had contractual rights which could not be abrogated. "It is true that a statute bad in part is not necessarily void in its entirety. A provision within the legislative power may be allowed to stand if it is separable from the bad. But no provision, however unobjectionable in itself, can stand unless it appears both that, standing alone, the provision can be given legal effect and that the Legislature intended the unobjectionable provision to stand in case other provisions held bad should fall."

Of course, in the Lynch Case there was no specific, separate section of the act withdrawing the remedy such as exists in the amendment to the Agricultural Act, but here the obvious fact remains that the legislative body would not have intended the section withdrawing equitable jurisdiction to stand if it had known that the section providing the administrative remedy was invalid. The two sections must be construed together and must stand or fall together.

This accordingly brings us to the question of whether section 21 (d) affords to the taxpayer such a remedy at law as will preclude his appeal to equity. The provisions of this section have been thoroughly analyzed and discussed in dozens of recent opinions by the lower courts and there is nothing to be gained at this time by attempting a further thorough analysis of the section. The taxpayer, in order to recover, must establish to the satisfaction of the commissioner that he has not deducted the tax, or any part thereof, from the seller, nor passed the tax, or any part thereof, on to the purchaser. Provision for judicial review is included in the section with the limitation that the transcript of the hearing before the commissioner shall be filed as the record in the case and shall be so considered by the courts. Complainants aver that this purported legal remedy is worthless; that the facts required to be established to the satisfaction of the commissioner are impossible of ascertainment. Respondents, on the other hand, relying principally upon the Jefferson Case (U. S. v. Jefferson Electric Mfg. Co.), 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859, assert that the legal remedy afforded is adequate. If it be admitted that under the reasoning of the Jefferson Case it can be fairly determined whether the tax is included in the sale price by adding to the cost of the commodity the expense of processing and a fair profit, it is difficult to see how the same reasoning can be applied to the matter of the purchase price. Here the processor is usually dealing in bulk commodities, such as rice, grain, pork, etc. The price which he pays for his commodity is necessarily determined by the general market. The general market is necessarily going to be more or less affected by the tax. How much or how little it is affected no one can say. A processor can hardly be expected to add some arbitrary amount to the price asked and pass the augmented price to the seller on the ground that he conceives the amount added to be the processing tax. The question as to whether the attempted legal remedy offered is of any value is, to say the least, extremely doubtful. Furthermore, apparently under the provisions of the section, the judicial review afforded is limited to a hearing on the record made by the commissioner. No limitations are provided as to what character of evidence the commissioner may receive or reject. The record made by the commissioner is apparently conclusive and may be thoroughly unsatisfactory, and yet the act seems to contemplate that the taxpayer shall have no trial de novo on the facts. While administrative remedies of this character have been upheld in many instances, the Supreme Court has held in the Osborne Case (Chicago, B. & Q. R. Co. v. Osborne), 265 U.S. 14, 44 S.Ct. 431, 68 L. Ed. 878, that they are inadequate as legal remedies.

Having these matters in mind and bearing in mind the fact that the Supreme Court has granted writs and injunctions in the Louisiana Rice Milling Cases, and that the two questions here presented will shortly be decided by that court of last resort, this court is of the opinion that the outstanding preliminary injunctions should not be dissolved. This conclusion is strengthened by the fact that the government is amply protected by the deposits which were required to be made as a condition precedent to the issuance of the writs. The complainants, on the other hand, are without protection should the

writs be dissolved and the tax immediately collected. They would, in event the Supreme Court holds in the pending cases that the law is invalid, be relegated to the long drawn out processes provided by section 21 (d) with the attendant uncertainties heretofore noted as to whether any showing could ever be made, regardless of how meritorious their cases, which would meet the requirements of the law.

The motions to dissolve the preliminary injunctions and dismiss the bills will be denied, and the parties may present appropriate decrees in each case.