## CAIN v. SOUTHERN ALKALI CORPORATION.

### No. 8533.

Circuit Court of Appeals, Fifth Circuit.

March 8, 1938.

Fred R. Switzer and D. T. Searls, both of Houston, Tex., for appellants.

E. J. Fountain, of Houston, Tex., and I. W. Keys, of Corpus Christi, Tex., for appellees.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

In an action at law in the lower court, the appellants sought to recover the converted value of their interest in solid salt removed by appellees from a 1,000-acre tract of land. It was alleged that the market value at the mine of appellants' interest in said salt amounted to $39,607.68. A jury being waived and the issue being submitted to the court, a judgment for appellants was rendered in the sum of $2,445, with interest and costs. Feeling aggrieved at the reduced amount awarded them, they appealed to this court.

Appellants and appellees are joint owners in a mineral lease which covers the land here involved. The former has a one thirty-second interest and the latter has the balance. The lease conveys the land for the production of oil, gas, coal, and other minerals. The appellants are entitled to their part of the minerals saved therefrom and delivered into the pipe lines with which the wells may be connected, or into tanks provided for that purpose.

Under this lease, oil, salt, and sulphur have been produced. At a depth of about 1,800 feet, large deposits of salt in solid form are found, but it is of an inferior quality and, in its natural state, is mixed with other minerals or foreign substances. There are only two ways to mine salt so situated: the shaft method and the well method. By the well method, the salt is generally freed from other minerals and foreign substances, and the brine comes to the surface composed of salt and water. The expense of mining salt of such inferior quality by the shaft method forced appellees to adopt the well method, which is to drill a well to the salt, force water down to it, convert it into brine, and force the brine to the surface.

The District Court found that it would be commercially unprofitable to produce salt from this land by the well method, and concluded that it would be unreasonable to expect any one to undertake it. It further found that to convert the brine into salt at the mouth of the well would require the construction of an expensive plant designed for that purpose, which would be economically unwarranted in view of the market price of the salt. Appellees would not have produced salt from the land under either method, except for the fact that they had a large chemical plant in Corpus Christi, Tex., about 65 miles east of the land. Needing brine, but not salt, for use in their chemical plant, they put down wells on the land and began producing brine in September, 1934, by forcing water down to the salt, and brine to the surface, as previously stated. They also constructed a pipe line from the land to said chemical plant and transported the brine therein to such plant. The brine so produced contains about 2,500 pounds of salt to each 1,000 gallons of brine. None of the product is sold by appellees, but all is used in their chemical plant. The appellants insist that they are entitled to the market price of dry salt, which is a great deal more than the salt in brine.

The trial court found that there is no market for salt at the mouth of the wells; that, if salt were produced from the wells, it would have to be transported to market by motortrucks or in railroad cars; that there is no market for brine at the mouth of the wells, and it must be transported by the only available pipe lines, which belong to appellees and lead to Corpus Christi; that there is no market for brine at Corpus Christi, as appellees do not purchase brine but produce it; that there are no facilities at the mouth of the wells for storing the brine or converting it into salt, or for storing or handling salt; and that appellants have no facilities for storing, handling, or marketing brine at Corpus Christi.

Conceding that appellants were entitled to their part of the brine brought to the surface, appellees inquired of them what disposition they desired made of it, and offered to purchase it or to deliver it into tanks, if provided by appellants. The latter refused to accept the same in the form of brine, but demanded that it be in the form of solid salt as it was originally in the ground. Appellees have, therefore, been delivering all of the brine into their pipe line and transporting it to, and using it in, their plant at Corpus Christi.

Since appellants were the owners of a one thirty-second, and appellees the owners of the other thirty-one thirty-seconds, interest in the solid salt in the ground, and since it was commercially unprofitable to mine the salt by either the shaft or well method, and since the appellees could not utilize salt in their plant in solid form, the District Court concluded, as a matter of law, that appellees had the right under the contract to bring the salt to the surface in the form of brine, and were not obligated to convert appellants' part again into salt before offering to deliver it. The court held that their obligation was to deliver it in brine in the manner set forth in the contract between the parties. This contract called for a one thirty-second part of all oil, gas, and other minerals saved by appellees to be delivered to appellants "free into the pipe lines with which the wells may be connected or into tanks provided by" appellants. The value of the brine, under the evidence, was fixed at 50 cents per 1,000 gallons, and judgment entered accordingly.

We think that delivery into the only pipe lines with which the wells were connected was in accordance with the contract, and that the court committed no error in

holding that appellants were not entitled to recover the value of solid salt at the nearest market, less the cost of transportation thereto. The appellants having provided no tanks or other receptacles at the mouth of the wells or elsewhere into which the brine might be delivered, it was necessarily appropriated by appellees and used by them in their plant at Corpus Christi. The finding by the court of the value of the brine has the same effect as the verdict of a jury, and, being supported by substantial evidence, should not be disturbed on appeal. 28 U.S.C.A. § 773; Dooley v. Pease, 180 U.S. 126, 21 S.Ct. 329, 45 L.Ed. 457; United States v. Jefferson Electric Mfg. Co., 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859.

The judgment appealed from is affirmed.