WOODALL, Justice.
 

 William R. Jewett appeals from a judgment in favor of Lester Boihem in Boi-hem’s action seeking restitution of money he paid Jewett and a company Jewett owned in an aborted business transaction. We affirm.
 

 I. Factual and Procedural Background
 

 This dispute arose out of events that began in approximately December 2005. At that time, Jewett was the sole owner and manager of Accu-Crete, LLC (“the company”). By a “letter of agreement” dated December 21, 2005 (“the letter agreement”), Jewett agreed to sell 50% of the company to Boihem for the sum of $2,000,000. The letter agreement stated that the company’s assets, which included “ready mix concrete trucks, concrete plants w/computers, heavy equipment ..., good will, bank accounts and accounts receivable,” would not be “alienate[d], encumber[ed] or impaired] ... pending closing.” The letter agreement required (1) the payment of $675,000 “to William Jew-ett personally,” and (2) the payment of $1,325,000 to the company “as a membership contribution.” The transaction was to close “on or before March 15, 2006.” Additionally, Boihem’s duty to complete the purchase was expressly made “contingent upon there being no material adverse change to the business or assets of [the company] prior to closing.”
 

 On December 30, 2005, Boihem sent Jewett a payment of $375,000. On January 30, 2006, Jewett sent Boihem an e-mail requesting an additional payment of $640,000. That sum was broken down as follows: (1) “$300,000.00 for re-imbursement on ex-partner buy out,” (2) “$150,-000.00 for down payment on plant at factory,” (3) “$40,000.00 for down payment on 5 front discharge trucks,” and (4) “$150,-000.00 for set up cost on Spanish Fort Plant and Additional Foley Plant for Condos.” Attached to the e-mail were “wiring instructions” directing Boihem to send the payment to the
 
 company’s
 
 account. Boi-hem made that payment as directed on February 27, 2006.
 

 The sale did not close by March 15, 2006, as provided in the letter agreement. Nevertheless, on March 23, 2006, Boihem wired a $300,000 payment to the company’s account. On May 24, 2006, over two months after the deadline for closing, Boi-hem received another e-mail from Jewett requesting a payment of $685,000 to complete the purchase price as set out in the letter agreement.
 

 Meanwhile, in early 2006, Jewett was receiving offers from Delta Industries, Inc. (“Delta”), a Mississippi corporation, to purchase the assets of the company, and negotiations between Jewett and Delta subsequently began in earnest. Evidence at the trial of this case was in direct dispute as to the extent, if any, of Boihem’s knowledge of these negotiations. In any event, on October 16, 2006, Jewett executed an “asset purchase agreement” with Delta, which
 
 *660
 
 transferred a number of the company’s assets to Delta for $1,849,000.
 

 Approximately one month later, on November 21, 2006, Jewett sent Boihem an email, declaring him to be in default of the letter agreement. Specifically, the e-mail stated:
 

 “Per our Letter of Agreement dated December 21, 2005, it was agreed ‘Whereas, it is agreed upon by all parties the full purchase price of the ownership interest is to be transferred pursuant to paragraph 3 of this document on the same day of closing.’ This has not happened to date. I have talked to you and emailed you on quite a few occasions about this. To date all monies have not been transferred. It has been almost a year since we started this negotiation. Also, I have made purchases personally on real estate for the progress of Accu-Crete and have given this information to [you] for [you] to do your part, this has not happened. To this date [you have] not held to [your] part of the agreement and are
 
 in default of the agreement.
 
 Not to mention that I have not ever received [your] signed part of the agreement. I believe that I have given you more than enough time and chance to make good on your end of the Agreement. Therefore, I am saying you ... are in default of the Agreement.
 
 I will he returning your monies that are owed to you ...
 
 before December 31, 2006. You should be receiving a letter via certified mail confirming this email.”
 

 (Emphasis added.) None of the $1,315,000 Boihem paid was ever returned.
 

 On January 10, 2007, Boihem sued Jew-ett, alleging (1) breach of contract, (2) money had and received, and (3) unjust enrichment. However, during the course of the subsequent nonjury trial, Boihem indicated in open court that he was seeking only
 
 restitution.
 
 Specifically, it was stated:
 

 “Q. [By Boihem’s counsel:] Mr. Boi-hem, tell Judge Reid what it is you are asking for this court to do in any ruling that it makes in this case, please.
 

 “A. [By Boihem:] Just to
 
 get my money back that I wired and any interest that might be due on that money.”
 

 (Emphasis added.) Subsequently, the trial court entered a judgment awarding Boi-hem $1,495,547, and Jewett appealed.
 

 On appeal, Jewett challenges the judgment on two grounds. First, he argues that the judgment is “so unsupported by the evidence as to be plainly and palpably wrong.” Jewett’s brief, at 14. According to Jewett, the judgment is contrary to the evidence, because, he insists, “[i]t is undisputed that Boihem did not fulfill his obligations under the [letter agreement]” and, therefore, that he “could not establish a claim for [b]reach of [c]ontract.” Jewett’s brief, at 13. Also, Boihem’s restitution claims must fail, because, Jewett argues, “Jewett received no money from Boihem and was not unjustly enriched.” Jewett’s brief, at 13. Second, he argues that the judgment must be reversed for failure to name the proper defendant, namely, the company.
 

 II. Discussion
 

 A. Evidentiary Challenges
 

 “It is well established that ‘[w]hen a trial court hears
 
 ore tenus
 
 testimony “its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.” ’ ”
 
 Black Diamond Dev., Inc. v. Thompson,
 
 979 So.2d 47, 52 (Ala.2007) (quoting
 
 New Props., L.L.C. v. Stew
 
 
 *661
 

 art,
 
 905 So.2d 797, 799 (Ala.2004), quoting in turn
 
 Philpot v. State,
 
 843 So.2d 122, 125 (Ala.2002)).
 

 1. Breach of Contract
 

 Jewett’s first evidentiary argument focuses on the weight of the evidence as to the breach-of-contract count in Boihem’s complaint. However, as pointed out previously in this opinion, Boihem essentially abandoned his breach-of-contract claim at trial by requesting only the
 
 return of the money he wired
 
 to Jewett and/or the company, with interest. By contrast, “[f]or breach of contract the law of damages seeks to place the aggrieved party in the same economic position he would have had if the contract
 
 had been performed.”
 
 John D. Calamari & Joseph M. Perillo,
 
 The Law of Contracts
 
 § 14-4 (3d ed. 1987) (emphasis added).
 

 There is no evidence, or contention, that the trial court’s award consisted of damages for breach of contract. Jewett challenges only the judgment itself, not the amount of, or the method of calculating, the award. Also, Jewett does not argue that the letter agreement or the claim that it was breached precludes restitution or recovery on an
 
 implied
 
 contract theory. See
 
 Kennedy v. Polar-BEK & Baker Wildwood P’ship,
 
 682 So.2d 443, 447 (Ala.1996) (“[Wjhere an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject matter.”). We, therefore, are not presented with such contractual issues as (1) which party first breached the letter agreement, (2) whether the breach by the first party excused further performance by the other party, or (3) the proper amount of the damages. The only issues presented concern the propriety of the judgment under the implied-in-law contract or restitution theories relied on in the trial court. “The intention of the parties in such a contract is entirely disregarded while in cases of express contracts and contracts implied in fact, the intention is of the essence of the transaction.” Je-nelle Mims Marsh & Charles W. Gamble,
 
 Alabama Law of Damages
 
 § 34:2 (5th ed. 2004) (hereinafter
 
 “Marsh & Gamble”).
 

 2. Unjust Enrichment/Money Had and Received
 

 “[An action for money had and received] is founded upon the equitable principle that no one ought justly to enrich himself at the expense of another, and is maintainable in all cases where one has received money under such circumstances that in equity and good conscience he ought not to retain it because in justness and fairness it belongs to another.”
 

 Marsh & Gamble,
 
 § 34:2. “[A] cause of action for money had and received is
 
 ‘less restricted and fettered by technical rules and formalities than any other form of action.
 
 It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which ... belongs to the plaintiff.’ ”
 
 Staats v. Miller,
 
 150 Tex. 581, 584-85, 243 S.W.2d 686, 687-88 (1951)(quoting
 
 United States v. Jefferson Elec. Mfg. Co.,
 
 291 U.S. 386, 402-03, 54 S.Ct. 443, 78 L.Ed. 859 (1934) (emphasis added)).
 

 According to Jewett, the judgment for Boihem is plainly and palpably wrong, because, he insists, Jewett does not “hold money” paid by Boihem. Jewett contends that the money Boihem paid was paid to the
 
 company;
 
 therefore, he says, he is not the proper defendant in this ease. We disagree.
 

 “Whenever one person adds to the other’s advantage in any form, whether by increasing his holdings or saving him from expense or loss, he has conferred a benefit upon the other.”
 
 Opelika Prod. Credit
 
 
 *662
 

 Ass’n v. Lamb,
 
 361 So.2d 95, 99 (Ala.1978). Moreover, “[i]t is not necessary ... to prove that money belonging to the plaintiff was actually and physically given to, and received by the defendant, as it is sufficient to show that ... the defendant has received the benefit
 
 indirectly.”
 
 42 C.J.S.
 
 Implied Contracts
 
 § 19, at 27 (2007) (emphasis added). “ ‘Often a person owes restitution for a benefit he received through entirely innocent behavior, and even
 
 through a transaction in which he took no part.’
 
 ”
 
 Pratt v. Watkins,
 
 946 F.2d 907, 909 (Temp.Emer.Ct.App.1991) (quoting
 
 Restatement (Second) of Restitution
 
 § 1(b), at 10 (Tent. Draft No. 1, 1983) (emphasis added)). Cf.
 
 Weakley v. Bra-han,
 
 2 Stew. 500, 501 (Ala.1830) (“[T]he rule [that one cannot make another his debtor without his consent] extends to all payments made to another’s use, where the action is brought in the name of him who advances the money.”);
 
 Oliver v. Camp,
 
 9 Ala.App. 232, 234, 62 So. 469, 470 (1913) (“An action for money paid does not lie except upon a request on the part of the defendant or his authorized agent. The request may be either express or implied. One’s request of another to make a payment for him may be implied from his subsequent ratification of the payment.”).
 

 Boihem paid a total of $1,315,000 toward acquiring a 50% interest in the company. Under the evidence, the trial court was authorized to find (1) that, while Jewett was requesting $685,000 from Boihem to complete the purchase, he was actively— and secretly — negotiating with Delta to strip the company of a substantial portion of the assets Boihem expected to receive for his payments; (2) that it was only after the Delta deal was concluded that Jewett declared Boihem in default of the letter agreement; (3) that Jewett initially signaled an intention to refund Boihem’s consideration; (4) that Boihem has received nothing for his consideration; (5) that the company, as bargained for, has been substantially compromised through no fault of Boihem’s; and (6) that the consideration Boihem paid belongs, in “justness and fairness,” to him.
 

 It is no answer to say, as Jewett does, that he owes no obligation simply because Boihem made payments to the company, rather than to him personally. Indeed, $375,000
 
 was
 
 paid directly to Jewett. Thus, to that extent, Jewett “holds money” directly that in “justness and fairness” belongs to Boihem.
 

 As for the rest of the money, it was paid to the company
 
 at the instance
 
 of Jewett. To the extent that the
 
 company
 
 is in Jew-ett’s hands, the
 
 money
 
 is in his hands. As the sole owner and manager of the company, Jewett had absolute authority over its assets and accounts payable as evidenced by the sale of company assets to Delta. In other words, Boihem’s payments enriched the company. The enrichment of the company in turn enriched Jewett as of the time, and to the extent, of his choosing. Jewett cannot avoid restitutionary principles by mere form, that is, by arbitrarily directing payment to one of two bank accounts, both of which were under his ultimate control. In short, the trial court’s judgment is not, as Jewett contends, “so unsupported by the evidence as to be plainly and palpably wrong.”
 

 B. Proper Party
 

 Finally, Jewett contends that the company is not only the proper party, but also an indispensable party, and, therefore, that the trial court’s judgment must be reversed for failure to join the company, pursuant to Ala. R. Civ. P. 19(a). Rule 19(a) states, in pertinent part: “A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in the person’s absence complete relief
 
 *663
 
 cannot be accorded among those already parties .... ” According to Jewett, because Boihem was seeking reimbursement of money he paid to the company, “[proper and complete relief was not afforded to the parties as a result of Boihem’s failure to name [the company] as a defendant.” Jewett’s brief, at 18.
 

 These objections are sufficiently answered by the discussion in the preceding section. As Boihem correctly points out, he had no agreement with the company and he seeks no money from the company. His agreement was with Jewett, and it is from Jewett that he seeks restitution. To countenance Jewett’s objection to nonjoin-der would only revive the argument already rejected in this opinion, namely, that restitution cannot be had from Jewett because he did not receive the money directly. That is not the law as applied to the facts of this case.
 

 III. Conclusion
 

 The trial court’s judgment is not palpably erroneous or manifestly unjust. That judgment is, therefore, affirmed.
 

 AFFIRMED.
 

 COBB, C.J., and LYONS, PARKER, and SHAW, JJ., concur.
 

 Although Justice Bolin did not sit for oral argument of this case, he has viewed the video recording of that oral argument.