## FUHRMAN & FORSTER CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 7172.

Circuit Court of Appeals, Seventh Circuit.
July 22, 1940.

Rehearing Denied Oct. 1, 1940.

Rayford W. Lemley, of Chicago, Ill., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and F. E. Youngman, Asst. Atty. Gen., for respondent.

Before SPARKS, TREANOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Fuhrman & Forster Company (petitioner) filed a refund claim for sums alleged to have been paid as processing taxes under the Agricultural Adjustment Act, 48 Stat. 31, 7 U.S.C.A. § 601 et seq. The Commissioner of Internal Revenue rejected the claim on the ground that the amount sought to be recovered had not been paid by or collected from the petitioner under the Agricultural Adjustment Act. Petitioner then sought review of the disallowance in the United States Processing Tax Board of Review. There, upon motion of the Commissioner, the Board dismissed the petition for lack of jurisdiction. The case is now before us on petition to review pursuant to Sec. 906(g) of the Revenue Act of 1936. 49 Stat. 1750, 7 U.S.C.A. Sec. 648. There are also three companion petitions —Nos. 7173, 7174 and 7175—filed with this court, which present the identical problem before us in the instant case. Upon motion made and order duly entered, the decision in this case shall apply to and be held as controlling in the other three cases.

The petitioner is engaged in the meat packing business and to the trade it is known as a "pork packer." Except for killing floor facilities, its business with respect to cutting, curing, smoking, cooking, manufacturing sausage and other processing is virtually the same as other packers who operate their own abattoir. The petitioner purchased the hogs in the open market (from the producer or commission houses) and engaged the C. A. Burnette Company (a customs slaughterer) to kill the hogs at an agreed price per head.

After the killing and chilling operations which are conducted under the supervision of the petitioner, the carcasses and viscera are transported to petitioner's plant for the treatment above described. Counsel for petitioner states that the customs slaughterer is a "bailee for hire to do a specific job under a contract" and that "with respect to the larger meat packing companies who own and operate their own abattoir, the slaughter of hogs is the first of a series of processes in preparing the hogs for market."

Petitioner paid the processing taxes for November and December of 1933, amounting to $13,711.23, directly to the Collector of Internal Revenue. Later the Collector returned the payments with instructions to pay the C. A. Burnette Company. Thereafter the Collector demanded payment of and received the tax from C. A. Burnette Company. From that time on C. A. Burnette Company sent the petitioner invoices for the killing charge and separate notices of the processing taxes on hogs slaughtered. In turn the petitioner paid C. A. Burnette Company the killing fee and processing tax by separate checks, and recorded the disbursements on its records as processing taxes paid. The money collected from the petitioner was actually used by C. A. Burnette Company for the payment of the processing taxes. The only exception to this method of payment appears to be the payment by the petitioner of $2.589.13 directly to the Collector on July 1, 1935. Although the petitioner has filed a refund claim for $260,075.15 (the amount of processing taxes paid as above described), the petition indicates that it bore the burden only to the extent of $18,126.43.

In the instant case counsel contends that petitioner was the processor within the intendment of the Agricultural Adjustment Act (48 Stat. 31), and that it ought not to be denied the right to a refund because it was compelled to pay the tax to the slaughterer. On the other hand counsel for the Commissioner contends that the slaughterer was the taxpayer under Title VII of the Revenue Act of 1936, 49 Stat. 1747, 7 U.S.C.A. § 623 note, 644 et seq. The main question here involved is whether the petitioner was the processor who was obligated to pay the processing tax under the statute.

*The Taxing Statute.* The Agricultural Adjustment Act was enacted in 1933 and the pertinent provisions for purpose of discussion herein are: (1) The Act imposed the processing tax upon the "first domestic processing" of the commodity and provided that the tax "shall be paid by the processor." 48 Stat. 35, 7 U.S.C.A. § 609 (a). (2) It also provided that the term "processing" means "In case of hogs, * * * the slaughter of hogs for market." 48 Stat. 36. It further provided (3) that no tax shall be required to be paid on processing by or for producers for home consumption, and (4) that "The Secretary of Agriculture is authorized, by regulations, to exempt from the payment of the processing tax the processing of commodities by or for the producer thereof for sale by him * * *." 48 Stat. 39, 7 U.S.C.A. § 615(b).

As the bill passed the House of Representatives it contained (1) and (3) above, a provision empowering the Secretary of Treasury to define "processing with respect to any commodity," and a provision stating that the Secretary of Agriculture is authorized "to exempt producers from the payment of the processing tax with respect to hogs * * * in cases where the producer's sales of the products resulting from the processing * * * do not exceed $100 per annum." Congressional Record, vol. 77, pp. 671-766. In the Senate amendments were introduced to the House bill and these were referred to the Committee on Agriculture and Forestry for consideration. Congr. Rec., vol. 77, pp. 786 et seq. Later this Committee reported the bill as amended to the Senate for general discussion thereon. Congr. Rec., vol. 77, pp. 1350 et seq. For our particular purpose, the Committee deleted the definition and exemption provisions described above and added (2). Thus the bill as amended contained (1), (2) and (3) already described.

The pertinent discussion indulged in by the Senate members, centered around a hypothetical set of facts which may be stated briefly as follows: a producer kills his own hog, grinds it up, packs it into sausage; he uses part of it for home consumption and sells part of it to the local grocer; what are the consequences of these actions under the bill as amended? See Congr. Rec., vol. 77, pp. 1562-1565, 1629. In the discussion that followed, the members of the Senate expressed what they thought would be the consequences under the facts of the hypothetical problem. It was concluded that there were at least three processing operations in the problem

but that provision (1) of the bill as amended indicated clearly that the tax is imposed on the initial processing operation, the actual killing; that killing the hog for home consumption was exempted under provision (3) of the bill as it passed the House or as amended by the Senate and that the killing of the hog for sale to the grocer was taxable under provision (2) of the bill as amended by the Senate. Therefore, an amendment was introduced immediately, in the form of provision (4) already described, to provide for occasional sales by the producer of his processed hog.

■ The provisions of the House bill as amended by the Senate—namely, parts (1), (2), (3) and (4)—became part of the Agricultural Adjustment Act. Part (2) was discussed in the Senate, the body that added it to the bill, and in that discussion its relation to (1), (3) and (4) was emphasized. If pages 1562 to 1565 of the Congressional Record (devoted to the Senate discussion summarized above) mean anything at all, they mean that the legislators who were responsible for part (2) thought the following: that were the exemption provisions of the bill deleted, not even a farmer who killed his own hog and sold part of the carcass to the local grocer was immune from taxation; that even he would be a slaughterer of hogs "for market" and therefore liable for the processing tax. We are convinced that the words "for market" in the statute are used to distinguish between the slaughtering of hogs by or for an owner for home consumption and the slaughtering of hogs where the resultant product is sold.

Agricultural commodities on their way to general consumption as food or for industrial purposes, usually undergo a series of one or more processing operations to prepare them for use and distribution. Thus hogs are not consumed as raw materials but in the form of pork products derived from certain processing operations. And inasmuch as the tax is levied on the processing of the commodity, it is necessary to take the commodity either as it enters the processing operations or after it emerges therefrom. The statute recognized these facts when it imposed the tax on the *first processing* of the hogs and provided that in the case of hogs the term *processing* meant the *slaughter of hogs* for market. The tax attached at the slaughtering operations, the initial operation in the series of operations necessary to prepare the hogs for market. It follows too that a tax attaching to the product as it emerges from the subsequent processing operations, would fail to reach part of the commodity on account of the loss of weight during the operations.

As soon as the Agricultural Adjustment Act was passed, the Department of Agriculture prepared regulations interpreting the term "processing" with respect to certain agricultural commodities. Sec. 9(d), 48 Stat. 36. In the case of hogs the first regulations defined the term in the words of the statute itself—"The first domestic processing is the slaughtering of hogs for market." Hog Regulations, Series 1, effective November 5, 1933. Later the Department of Agriculture availed itself of Section 15(b) of the Act, 48 Stat. 39, and make two exceptions to the standard that the first domestic processing is the slaughtering of hogs. Hog Regulations, Series 1, No. 1, issued October 29, 1934. These exceptions exempted the "producer" or "feeder" who slaughtered his own hogs[1] and sold the carcass to such transferees as butchers, packers, retailers, hotels and restaurants. In these instances the initial act of the transferee in preparing the carcass for use was held to constitute the "first domestic processing." No other hog regulations were issued after October 29, 1934.

These departmental regulations were further refined by Treasury Decisions and rulings issued by the Bureau of Internal Revenue. See Sec. 10(d), 48 Stat. 37, 7 U.S.C.A. § 610(d). Regulations are general rules only and often special problems have to be met. The effect of the regulations, Treasury Decisions and Bureau rulings is to give an exact statement of what is to be taxed, who is to be taxed and at what point in the processing operation the tax is to be imposed. Our exact factual situation, the case of the customs processor, soon came to the attention of the tax collectors. Who was liable for the tax—the customs slaughterer or his customer (pork packer)? On May 14, 1934, the

---

[1] A *feeder* was defined as a person engaged in the fattening of hogs for market or in farming operations, except "retailers, wholesalers or distributors of meat, butchers, abattoirs, slaughter houses, packers, factors or commission merchants." A *producer* was a person who owned "the hog at the time of farrowing."

ruling was made that the customs slaughterer was the first domestic processor of the hogs in such a case and that he was liable for the processing tax. See Internal Revenue Bulletin, No. 20, p. 19, dated May 14, 1934; C.B. XIII-1, p. 451, January-June 1934. In the instant case the Government imposed the tax on C. A. Burnette Company (the customs slaughterer).

■ *Refund Statute.* In 1936 the Agricultural Adjustment Act was held unconstitutional in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, and thereafter Congress enacted Title VII of the Revenue Act of 1936 which provided for a refund of the processing taxes. 49 Stat. 1747. Heretofore we have discussed the several provisions of this refund statute. F. & F. Laboratories v. Commissioner, 7 Cir., 104 F.2d 563; Oswald Jaeger Baking Co. v. Commissioner, 7 Cir., 108 F.2d 375, certiorari denied, 60 S.Ct. 723, 84 L.Ed. 1027. Upon further consideration we find no reason for receding from what we there said. We held in those cases that the statute restricted refunds to the particular processor who alone was obligated to pay the processing tax under the taxing statute.

Clearly this statute authorizes refunds to any processor who was obligated under the Agricultural Adjustment Act to pay the processing tax and can show that he did not pass the tax burden on to others. Sec. 902, 49 Stat. 1747. But, as far as it is pertinent here, the statute arranges the claims of taxpayers under the taxing statute into two classes and then applies separate enforcement procedures to each class of claims. The claims are classified as follows: (1) Processing tax refund claims, or claims of taxpayers who paid taxes upon the processing of commodities used in their own business; and (2) custom processing tax refund claims, or claims of taxpayers who paid taxes with respect to the processing of commodities for customers for a charge or fee. Sec. 902, 49 Stat. 1747; Sec. 913(b), 49 Stat. 1754; Art. 101(h), (i), (k), T. R. 96, promulgated under the Revenue Act of 1936. In this regard the Commissioner has provided that claims be filed on separate forms; claim (1) on P. T. Form 79; and claim (2) on P. T. Form 78. Sec. 903, 49 Stat. 1747; Arts. 501 and 601, T. R. 96. The enforcement procedures selected are as follows: for the enforcement of claim (1), from Commissioner to Board of Review to the appellate courts (Sec. 906, 49 Stat. 1748); for the enforcement of claim (2), from Commissioner to District Court or Court of Claims to the appellate courts (Secs. 904 and 905, 49 Stat. 1748).

■ *Conclusions.* We have studied the statutes and now we can answer the problem. The taxing statute taxes the first domestic processor and in the case of hogs this person is the slaughterer, the one who performs the initial processing operation. It does not require that the slaughterer be also a packer in his own right before he qualifies as the first domestic processor and taxpayer. It is not concerned with the number of processing operations but with the first processing operation. The person who performs the slaughtering—he may also perform the subsequent processing operations (packer) or he may specialize in killing only (the independent abattoir)— is the first domestic processor and taxpayer under the taxing statute. In the instant case C. A. Burnette Company was engaged in the special business of slaughtering hogs for others—a professional killer of hogs. This company slaughtered petitioner's hogs as an independent contractor and paid the processing tax to the Government, and was the first domestic processor and taxpayer under the Agricultural Adjustment Act.

■ Moreover the refund statute recognized the claim of the C. A. Burnette Company type of claimant [class (2)] and authorizes a refund of the taxes paid, if the claimant can show it bore the tax burden. Of course C. A. Burnette Company could not recover under the statute, for it passed on the burden. Assuming, however, that petitioner were the proper tax claimant, it would be a claimant in class (2) under the refund statute. A substantially identical case arose in the fifth circuit, and the Court there said: "The Board of Review was given jurisdiction to review only claims of taxpayers who paid processing taxes upon the processing of commodities used in their own business. The amount sought to be recovered in this action represents taxes paid with respect to the processing of an agricultural commodity for customers for a charge or fee, and the Board of Review had no jurisdiction to review the Commissioner's disallowance of the claim." Arabi Packing Co. v. Commissioner, 5 Cir., 109 F.2d 278, 279, certiorari denied June 6, 1940, 60 S.Ct. 1093, 84 L.Ed. 1412. We agree with the quoted statement: the Board of Review has no jurisdiction over claims of class (2).

Nor does the refund statute violate due process in its application to petitioner. If petitioner was not the first domestic processor and taxpayer under the Agricultural Adjustment Act, it had no right to a refund. In failing to provide a refund to petitioner in such a case, the refund statute did not violate due process.

The decision of the Board of Review should be affirmed.

Affirmed.