**INTERWOVEN STOCKING CO. v. UNITED STATES.**

No. C–1512.

District Court, D. New Jersey.

Oct. 28, 1943.

Remsen Cowenhoven, of New Brunswick, N.J. (Kirlin, Campbell, Hickox, Keating & McGrann by A. Maurice Fridlund, all of New York City, and C. S. Cunningham, of Ossining, N. Y., of counsel), for plaintiff.

Charles M. Phillips, U. S. Atty., by B. Thorn Lord, Asst. U. S. Atty., both of Trenton, N.J., and Frederick G. Rita, Sp. Asst. to Atty. Gen., for defendant.

FORMAN, District Judge.

This action is to recover cotton floor stock taxes exacted under the Agricultural Adjustment Act, which was held to be unconstitutional in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914.

The procedure by which application may be made for refunds of processing and floor stock taxes imposed under the Agricultural Adjustment Act is set out in 26 U.S.C.A. Int.Rev.Acts, pages 960–965, §§ 902–907 inclusive. 7 U.S.C.A. §§ 644–649. The following conditions are prescribed under which refunds are allowed:

"§ 902. Conditions on Allowance of Refunds. No refund shall be made or allowed, in pursuance of court decisions or otherwise, of any amount paid by or collected from any claimant as tax under the Agricultural Adjustment Act, unless the claimant establishes to the satisfaction of the Commissioner in accordance with regula-

tions prescribed by him, with the approval of the Secretary, or to the satisfaction of the trial court, or the Board of Review in cases provided for under section 906, as the case may be—

"(a) That he bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, (1) through inclusion of such amount by the claimant, or by any person directly or indirectly under his control, or having control over him, or subject to the same common control, in the price of any article with respect to which a tax was imposed under the provisions of such Act, or in the price of any article processed from any commodity with respect to which a tax was imposed under such Act, or in any charge or fee for services or processing; (2) through reduction of the price paid for any such commodity; or (3) in any manner whatsoever; and that no understanding or agreement, written or oral, exists whereby he may be relieved of the burden of such amount, be reimbursed therefor, or may shift the burden thereof; or

"(b) That he has repaid unconditionally such amount to his vendee (1) who bore the burden thereof, (2) who has not been relieved thereof nor reimbursed therefor, nor shifted such burden, directly or indirectly, and (3) who is not entitled to receive any reimbursement therefor from any other source, or to be relieved of such burden in any manner whatsoever."

Between August 30, 1933, and November 28, 1933, the plaintiff, a manufacturer of men's socks, paid $10,939.48 to the Collector of Internal Revenue for floor stock taxes based on hosiery in the plaintiff's inventory on August 1, 1933, which had been processed from cotton. Likewise, between the same dates, plaintiff's subsidiary, The Interwoven Mills, Inc., which has since merged into and consolidated with the plaintiff, paid $18,797 to the Collector of Internal Revenue for floor stock taxes based on hosiery processed or to be processed from cotton in its inventory on August 1, 1933. Plaintiff seeks to recover both these sums, totalling $29,736.48, from the defendant.

On June 25, 1937, the plaintiff filed claims for the refund of these taxes with the Commissioner of Internal Revenue who rejected the claims on April 26, 1939.

Plaintiff's complaint contains three separate causes of action, one for each of the aforesaid sums of money and one for the total of the two sums, alleging that it bore the full tax and has not been relieved of, nor reimbursed for it, nor has it shifted that burden to others.

The defendant contends that the subsidiary shifted the tax by passing it on to the plaintiff through manufacturing costs and therefore is not entitled to any refund, the right to which it could transfer to the plaintiff if it had borne the burden of the tax, while the plaintiff contends that it is entitled to recover the tax paid by its subsidiary because it and its subsidiary are but one entity for the purpose of this Act.

The defendant contends that the plaintiff failed to establish that it bore the burden of the payment of the tax and that, in fact, plaintiff passed the tax on by an increase in prices. The plaintiff submitted that no presumption of having passed the tax on arises from the price increases made before the tax went into effect and that it has established by the evidence that plaintiff bore the full burden of the tax and did not shift it to others, although it conceded that it increased its prices before and after the imposition of the tax.

■ The first proposition urged by the defendant is that the plaintiff cannot recover the tax paid by its subsidiary. The Interwoven Mills, Inc., was wholly owned and controlled by the Interwoven Stocking Company, the parent company, almost all of the stock of which was owned by John Wyckoff Mettler, its president. The subsidiary manufactured goods exclusively for its parent at its parent's direction. There is evidence to show that the subsidiary made no profit and sustained no loss on any of the goods it manufactured. It regularly charged the plaintiff at estimated cost, such cost being established by a standard cost system. The plaintiff and its subsidiary occupied the same principal offices and with a few exceptions had the same directors and officers, who were chosen by the president and principal stockholder of the plaintiff. It is to be noted that the Supreme Court has construed sec. 902 of The Revenue Act of 1936 as limiting the right to a refund of taxes to the real party in interest. United States v. Jefferson Electric Mfg. Co., 291 U.S. 386, 54 S.Ct. 443, 78 L. Ed. 859; Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143. The consumer who would ultimately pay the tax if prices were increased, or the supplier of the raw materials who would ultimately

pay the tax if the price he received for the raw materials were reduced, would be the real party in interest, respectively, and not the wholesaler or manufacturer who, although having physically made the payment to the Collector of Internal Revenue, was reimbursed therefor. It was intended by means of sec. 902 to prevent the unjust enrichment of a wholesaler or manufacturer who is in a position to shift the tax to his vendor or to his vendee. The defendant offers the theory that The Interwoven Mills, Inc., (the subsidiary), charged the tax to the plaintiff through manufacturing costs and therefore the plaintiff could not claim the tax by reason of its being the transferee of the right to the claim for a tax refund by The Interwoven Mills, Inc. because the latter itself did not possess the right.

In Roomberg v. United States, D. C. 40 F.Supp. 621, a motion to dismiss the complaint was denied where the sole stockholder of a dissolved corporation sought to recover floor stock taxes paid by the corporation. The court said: "The fiction of a corporation as an entity distinct from the aggregate of individuals comprising it was designed to serve convenience and justice. There is consequently an exception recognized wherever the rule is known, namely that the fiction will be disregarded and the individuals and corporation considered as identical whenever justice or public policy demand it and when the rights of innocent parties are not prejudiced thereby nor the theory of corporate entity made useless." 40 F.Supp. at page 624.

Similarly, an assignment by a corporation to its stockholders of a subsequently allowed tax refund prior to its dissolution was held to be a valid assignment where the stockholders were the only parties in interest and already owned the entire beneficial interest. Novo Trading Corporation v. Commissioner of Internal Revenue, 2 Cir., 113 F.2d 320.

A shift of the burden of the tax by charging it to manufacturing costs was not intended by sec. 902 to preclude the right to a refund where it is established that a taxpayer wholly owned and controlled its subsidiary company which it used solely and exclusively as a manufacturing unit as in the instance of the plaintiff in this case, if the costs representing the tax were not passed on to the taxpayer's vendees.

The plaintiff acquired whatever rights The Interwoven Mills, Inc., had to the tax refund as a consequence of the merger into and consolidation with the plaintiff on December 11, 1936. The plaintiff was the sole stockholder of its subsidiary, which is now a part of plaintiff, and the subsidiary and the plaintiff can be considered as identical in equity, and plaintiff as the real party in interest, for the purpose of claiming this tax refund.

The determining factors in considering whether the plaintiff bore the burden of the tax and did not shift it to others are not the motive or intent involved in the increase, but are found by looking to the evidence to see what actually was done concerning increased prices. We must determine to what extent prices were increased and whether the additional revenue which came to the taxpayer because of the price increase was large enough to take care of the tax itself in addition to any increased costs in the manufacture and production of the product. In order to do this, it is essential to consider every factor that played a part in the increase of the price, such as supply and demand, competition, increased labor costs, increased operating and sales expenses and increased cost of materials. United States v. Cheek et al., 6 Cir., 126 F.2d 1; C. B. Cones & Son Mfg. Co. v. United States, 7 Cir., 123 F.2d 530; H. T. Poindexter & Sons M. Co. v. United States, D.C., 40 F.Supp. 787; Hutzler Bros. Co. v. United States, D.C., 33 F.Supp. 801.

The defendant calls attention, among others, to the cases of C. M. McClung & Co. v. United States, Ct.Cl., 35 F.Supp. 464, and Luzier's, Inc., v. Nee, 8 Cir., 106 F.2d 130, as instances wherein the court found that the tax had been passed on. In the case of C. M. McClung & Co. v. United States, supra, there was an action to recover floor stock taxes wherein it was shown that prior to 1933 a flat rate of 17% was added to the cost of the goods to cover operating expenses and profit. This same 17% was added after 1933 at which time the tax was *included* in computing the cost of the goods. The court sustained the tax. To the same effect, Luzier's Inc., v. Nee, supra, where the evidence submitted left no doubt that the tax was passed on to others.

The defendant lays much stress on the case of Honorbilt Products, Inc., v. Com'r of Internal Revenue, 3 Cir., 119 F.2d 797,

798. In that case a mattress company seeking a refund of floor stock taxes had raised the price on this product chiefly because its competitor did the same. We find definite distinction therein from the present case. In the Honorbilt case the court said: "The increase was more than sufficient to take care of the tax and there is *nothing in the record to show that the increase in price was due to any increase in the cost of raw materials, of labor or of manufacture generally*". [Italics supplied.] This distinction was also drawn in the case of H. T. Poindexter & Sons M. Co. v. United States, supra, wherein the language above was specifically quoted. 40 F.Supp. at page 789. The case at bar is replete with evidence held to be lacking in the Honorbilt case. Increases in labor and material costs and changed conditions in manufacture generally were amply demonstrated.

Let us now consider the facts in this case. The Interwoven Stocking Company was incorporated in 1906. From 1917 for approximately ten years the prices of plaintiff remained almost identical for all grades of merchandise. Established lines were sold each year without change, the quality remaining the same. Rising costs in labor, materials, and selling and administrative expenses, in the early part of 1933, which continued to rise steadily, culminated in a price increase on July 1, 1933. The plaintiff was operating at an average monthly loss of $100,000 at the time these costs began to rise. A code for the hosiery industry under the National Industrial Recovery Act, 48 Stat. 195, was being prepared at this time. A preliminary code went into effect in July of 1933 and the final code for the industry in September of 1933. These codes, in the preparation of which plaintiff's president participated, had the effect of increasing the cost of plaintiff's production. On July 1, 1933, prices on goods of the plaintiff known to the trade as "staples" were increased. The major portion of plaintiff's business is transacted in what are known to the trade as "fancies". The prices of the fancies were increased on October 1, 1933.

Very complete records were offered in evidence to show the composition of the inventory of August 1, 1933, and the date and quantity of sale of the various styles listed therein and the balance of such inventory left on hand on January 6, 1936. The plaintiff paid taxes on goods in its inventory on August 1, 1933, which were processed in chief value from cotton. The total inventory of plaintiff of this merchandise, (i.e., the combined inventory of Interwoven Stocking Company and The Interwoven Mills, Inc.), at that date amounted to 455,642 dozen pairs of hose. Of this total, 247,578 dozen pairs were in a finished state, 26,943 dozen pairs in a partly finished state and 181,121 dozen pairs in raw materials. At the close of the taxable period, January 6, 1936, plaintiff still had on hand 8,267 dozen pairs. The goods which were in a finished state on August 1, 1933, sold subsequently at the increased prices, netted the plaintiff a loss of $13,635.72. The goods in a partly finished state on August 1, 1933 and the goods consisting of raw materials on that date, most of which were subsequently finished and sold, netted the plaintiff profits of $2,579.53 and $16,270.49 respectively. Upon recapitulation we find that the plaintiff's revenue increased $5,214.30 on all the goods in inventory on August 1, 1933, which were sold subsequently at increased prices with the exception of 8,267 dozen pairs of hose which were unsold as of January 6, 1936. The unsold portion amounting to 8,267 dozen pairs in the inventory of August 1, 1933, is inconsequential inasmuch as it represents less than 2% of the total inventory on August 1, 1933.

The income account of the plaintiff for 1932 shows a gross profit from sales of $127,874.08 and $774,204.37 in administrative and selling expenses with a net loss for the year of $690,301.62. In 1933 the loss was reduced to $341,846.80 with gross profit from sales rising to $597,954.71 and administrative and selling expenses increasing to $946,112.15. The net loss was further decreased in 1934 to $48,967.61, with a gross profit from sales of $883,618.30 and administrative and selling expenses amounting to $943,982.37. The 1935 figures show an increase in the net loss to $326,024.74, a decrease in the gross profit from sales to $780,735.29 and an increase in administrative and selling expenses to $1,072,114.31.

The cost of raw materials increased steadily from 1933 to 1935. Typical examples of the increased cost of cotton yarn were as follows: Style #36/2 Mercerized was .33 in 1933 and .51 in 1935; style #60/2 Mercerized was .43½ in 1933 and .66 in 1935; style #80/2 Mercerized was .66½ in 1933 and .90 in 1935.

The increase in the average manufacturing labor cost per dozen is disclosed by reference to the following table prepared and offered in evidence by the plaintiff:

| Year | Payroll Period | Dozens Produced | Total Payroll | Average Cost |
|------|---------------|-----------------|---------------|--------------|
| 1933 | May 1 to 27th | 107,871–4 | $ 51,246.95 | $ .4751 |
| | June 12 to July 8th | 115,204–4 | 55,251.70 | .4796 |
| | Oct. 1 to 28th | 133,026–4 | 121,600.75 | .9141 |
| | Oct. 30 to Nov. 25th | 158,006–1 | 159,282.65 | 1.0081 |
| 1934 | Year | 1,375,670–4 | 1,386,413.05 | 1.0078 |
| 1935 | Year | 1,382,085–7 | 1,510,993.60 | 1.0933 |

The defendant argues that the increased labor cost was 4½ mills per dozen, arriving at this figure by comparing the average cost for the payroll period of May 1 to 27, 1933, and the average cost for the payroll period of June 12 to July 8, 1933. Such a comparison is not typical in the light of other figures submitted by the plaintiff which showed a sharply ascending increase in wage rates from April 1, 1933, to August 6, 1933, to meet established minimum wage levels, which became effective on September 4, 1933, when the National Recovery Act wage rates for the hosiery industry were established. The following are examples of the wage increases for the operations named during the aforesaid period:

This evidence was submitted in the form of financial statements and tables prepared by plaintiff's accountants. The defendant has not questioned the truthfulness or the accuracy of the evidence, nor has the defendant offered evidence of its own to contest that offered by the plaintiff.

■ The plaintiff contends that the price increase of July 1, 1933, was in effect prior to the effective date of the tax and therefore cannot be considered as designed to shift the burden of the tax. This reasoning was rejected in the case of Lee Rubber & Tire Corp. v. United States, D.C., 49 F. Supp. 6, 8, where the court, in commenting on a similar contention of the plaintiff in that case, said: "The first contention of the plaintiff, although strenuously urged, carries little conviction. Surely the failure to have the date of the price increase coin-

| Operation | Apr. 1, 1933 | June 30–33 | July 17–33 | Aug. 6–33 |
|-----------|--------------|------------|------------|-----------|
| | Per hour | Per hour | Per hour | Per hour |
| Rib Knitting | .15 | .16–1/2 | .20–1/2 | .30 |
| Rib Draw | .14 | .15–1/2 | .19 | .30 |
| Knitting | .12 | .13 | .16 | .30 |
| " | .15 | .16–1/2 | .21 | .32 |
| " | .16 | .17–1/2 | .22 | .34 |
| Inspecting | .15 | .16–1/2 | .20–1/2 | .30 |
| Trimming | .14 | .15–1/2 | .19 | .30 |
| Looping | .17 | .19 | .24 | .32–34 |
| Seaming | .15 | .16–1/2 | .20–1/2 | .32 |
| Dye Tub Operators | .19 | .21 | .26 | .34 |
| Sorters | .17 | .19 | .24 | .30 |
| Boarders | .23 | .25–1/2 | .32 | .34–38 |
| Inspectors | .16 | .17–1/2 | .22 | .30–32 |
| Pairers | .23 | .25–1/2 | .32 | .34–38 |
| Tickets | .14 | .15–1/2 | .19 | .30 |
| Stamp-Labels | .17 | .19 | .24 | .34 |
| Label-Print | .23 | .25–1/2 | .32 | .34 |
| Label-Paste | .17 | .19 | .24 | .32 |
| Shipping | .23 | .25–1/2 | .32 | .38 |

cide precisely with the date of the incidence of the tax has little bearing on the question whether the tax was borne by the plaintiff or shifted to its purchasers." However, the price increase of July 1, 1933, in the instant case was solely on staples, which admittedly constitute at most one-third of the plaintiff's business. Of all the staples manufactured by plaintiff, only the prices of twelve styles were increased. Five of these twelve styles were manufactured in special sizes for stout persons and extra large sizes 13 and 14. The quantity of this merchandise sold between July 1 and August 1 could not be such as to add appreciably to the increased revenue an amount which would offset the increased costs enumerated herein. Likewise, several of the remaining seven styles on which prices were increased on July 1, 1933 were in the higher priced merchandise and the quantity of such sales is considered limited.

■ The defendant's attack on the evidence submitted by the plaintiff is based on the theory that the goods upon which the tax was paid were manufactured at the lower costs of raw materials and labor "because the floor stock tax which was paid by the plaintiff was entirely upon finished goods." The defendant contends, therefore, that the actual cost of the goods at the time they were manufactured should be used as the base cost in comparing the selling price of the goods with the cost of the goods sold. This theory was considered in the case of C. B. Cones & Son Mfg. Co. v. United States, supra, and it was decided that the theory of replacement value of the product is the method to be used in determining whether a refund of floor stock taxes should be allowed where there is an increase in the price of the product. Moreover, although it is impossible to state with certainty how much of the inventory of The Interwoven Mills, Inc. (subsidiary) was finished product, it is fair to assume that a substantial proportion was still unprocessed and was subject to increased costs accruing subsequent to August 1, 1933.

Defendant has also referred to the case of Vennell v. United States, D.C., 36 F. Supp. 646, affirmed 3 Cir., 122 F.2d 936, as authority for the proposition that losses during 1933 did not support the conclusion that plaintiff bore the burden of the tax. In that case the court held:

"The great bulk of the goods and material subjected to tax was *admittedly sold thereafter at a price aimed to recoup the* *tax paid.* It is the contention of the claimant, however, that the desired effect was not obtained since the other costs, currently increased, closely approximated the new price. Upon this basis the claim for refund is founded. The evidence establishes that an increase in other costs did occur, but, I cannot agree that the fact these costs practically equalled the increased sales prices establishes that the tax, in fact, was not passed on to the vendees of the goods. The tax was but one factor in the cost of the goods sold, and I am not convinced that the tax was not shifted to the purchasers. The fact of continued net losses cannot operate to impair the effect of the evidence that the prices at which the goods were sold were set with a view to recover the tax paid. [Italics supplied.]

"The plaintiff's witness, Howe, at one point made reasonably specific estimates of an amount of goods alleged to have been carried continuously, during the pertinent period, in the inventory, but on cross-examination stated that he could not say, as a matter of fact, that any specific amount was retained. Having failed to demonstrate that the tax was not passed on by raising the price of the goods sold, and having failed to establish that any specific amount of goods subjected to tax was not sold during the period such prices were effective, it follows that the plaintiff cannot be allowed a refund." 36 F.Supp. at page 648.

In the instant case there is no admission that the goods were sold at a price "aimed to recoup the tax paid". The fact is that the contrary is claimed and proved. Plaintiff in that case was confronted with defendant's showing of plaintiff's *"admitted efforts* to shift the burden placed on the bulk of its goods and *proven inability* to define the amount of goods sold free of the burden". [Italics supplied.] 36 F. Supp. at page 649. On the basis of the extent and quality of the proofs in this case, the case of Vennell v. United States fails in analogy.

■ That the tax payments were included in the computation of the costs of the plaintiff as shown by the affidavit of Mr. Van Winkle, the treasurer of the plaintiff, has not been overlooked. It is, nevertheless, overwhelmingly proven that the plaintiff had not recovered these costs nor had they been shifted to others.

Therefore, judgment should be entered in favor of the plaintiff in the sum of $29,736.48, together with interest and costs.