## UPCHURCH PACKING CO. v. UNITED STATES.

### No. 2358.

District Court, N. D. Georgia, Atlanta Division.

Dec. 18, 1943.

792

Sutherland, Tuttle & Brennan, of Atlanta, Ga. for plaintiff.

M. Neil Andrews, U. S. Atty., and Harvey H. Tisinger, Asst. U. S. Atty., both of Atlanta, Ga., for defendant.

RUSSELL, District Judge.

During the years 1933–1934 and 1935 plaintiff, a corporation, was engaged in the meat packing business, consisting of the purchasing, slaughter and butchering of hogs, cattle and sheep for sale. Plaintiff did not slaughter its own animals but had this service performed for it by the Atlanta Butcher's Abattoir and Stockyards

Company, hereinafter referred to as the abattoir. During such period and until December 28, 1935, W. A. Upchurch was the president and sole stockholder of the plaintiff and of the abattoir. On December 28, 1935, in accordance with the plan of reorganization duly adopted by the stockholders of the plaintiff and of the abattoir, plaintiff, in consideration of one hundred shares of its capital stock which were issued and delivered to the abattoir, acquired all of the assets of the abattoir of every character, real and personal, tangible and intangible, and its shares of stock received by the abattoir were distributed to "stockholders" of the abattoir which in exchange therefor took up all of its capital stock from its stockholders. The abattoir was dissolved by order of the court on December 29, 1936. It is alleged that in accordance with the regulations issued under the Agricultural Adjustment Act of 1933, 7 U.S.C.A. § 601 et seq., the abattoir paid to the Collector of Internal Revenue custom processing taxes upon the slaughtering of the hogs for customers in the amounts and dates as indicated totalling $45,183.85. Of that amount it is alleged that custom processing taxes were paid by the abattoir "on account of the slaughtering of hogs for plaintiff" for the months and in the amounts set forth, totalling $33,968, and that the abattoir collected such sums by adding the amount of tax as a specific item to the amount of the customary charge for slaughtering hogs. The plaintiff bore the burden of a substantial portion of the taxes and in no manner has shifted the burden or been relieved thereof. Plaintiff filed a timely claim for refund of the processing taxes on its own behalf and at the same time filed a similar claim in the name of the abattoir and W. F. Upchurch, sole stockholder at the time of the dissolution, and after disallowance of the claim this suit was commenced.

The petition contains a second count which is admittedly for the purpose of the present allegation controlled by that made of the sufficiency of the first count. In a third count it is alleged that plaintiff itself paid certain floor stock taxes to the Collector under the Agricultural Adjustment Act and that plaintiff bore the burden of such amounts and did not shift the burden to others. All the taxes are alleged to have been unconstitutionally collected for the reasons set forth in United States v.

Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914.

The government moves for judgment dismissing the complaint upon the ground "that none of the contentions alleged in the complaint state a claim against the defendant upon which relief can be granted." Upon argument the motion is directed primarily to the first and second counts of the complaint.

The defendant concedes for the purpose of this motion that the assignment of the claim for taxes paid by the abattoir does not violate the prohibition of section 3477 of the Revised Statutes, 31 U.S.C.A. § 203, relating to the assignment of claims against the government. Seaboard Air Line Railway v. United States, 256 U.S. 655, 41 S.Ct. 611, 65 L.Ed. 1149.

By the provisions of section 902 of Title 7 of the Revenue Act of 1936, 7 U.S.C.A. § 644, Congress restricted the right of refund of such processing taxes, and plaintiff does not contend that the abattoir as such could establish a right to refund thereunder, or that it could recover such additional amounts as were charged it by the abattoir and by it paid as taxes, as no reorganization had taken place. The contention is that as a result of the reorganization prior to the passage of the Revenue Act of 1936, supra, the taxpayer, and the party who bore the burden of the tax by increased cost, became merged so that plaintiff was entitled to assert the claim for refund and also became possessed of the right to recovery thereof enjoyed by the abattoir prior to the passage of the Revenue Act of 1936.

It is clear, as conceded, that the abattoir could not have enforced collection of the refund for it had passed the burden on to the plaintiff. The plaintiff could not have enforced collection of the refund for it was not the taxpayer. Arabi Packing Co. v. Commissioner, 5 Cir., 109 F.2d 278, certiorari denied 310 U.S. 645, 60 S.Ct. 1093, 84 L.Ed. 1412; Lindner Packing & P. Co. v. Commissioner, 10 Cir., 118 F.2d 656; Oswald Jaeger Baking Co. v. Commissioner, 7 Cir., 108 F.2d 375; Fuhrman & Forster Co. v. Commissioner, 7 Cir., 114 F.2d 863; Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143.

Did the purchase by and assignment to the plaintiff of all of the assets of the abattoir so unite in plaintiff the burden it had bore in increased costs, but not taxes, that the tax payments which had been made by the abattoir so as to create in plaintiff the right to recover refunds under the terms of Section 902 of Title 7 of the Revenue Act of 1936?

In this case plaintiff relies upon the provisions of Section 902 of Title 7 of the Revenue Act of 1936. This statute has been construed to "confine the right of refund to those on whom the statute placed the burden of paying the tax" and "of controlling importance is that no processing taxes was paid by the petitioner to the Government or ·collected by the Government from the petitioner and that by the terms of the Act in question, no claim for refund was provided." Lindner Packing & P. Co. v. Commissioner, supra [10 Cir., 118 F.2d 658], 118 F.2d at page 658, 659. The Supreme Court in Anniston Manufacturing Co. v. Davis, supra, 301 U.S. at page 350, 57 S.Ct. at page 822, 87 L.Ed. 1143, likewise recognized that "under title VII, here involved, there is no provision for making a refund to particular persons, to whom the burden of the invalid exaction may be found to have been shifted." Certain it is that the plaintiff was not the taxpayer provided for in the statute, nor did the purchase of the taxpayer's assets transform it into such taxpayer. It asserts that it is a "claimant" within the terms of the statute and accordingly, as it bore the actual burden of the tax, it comes within the terms of the statute, and, having secured the right of action of the taxpayer, is entitled to proceed thereunder. This argument overlooks the antecedent provision of the statute which provides that no refund shall be allowed "of any amount paid by or collected from any claimant as tax," the provision "claimant" in effect defines such as one from whom "tax" has been collected. While the situation is not identical, the principle announced in New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 791, 78 L.Ed. 1348, is controlling on this feature of the case. The plaintiff here was a corporate entity, as was likewise the abattoir. The fact·that Upchurch was the sole stockholder in both corporations does not in the circumstances of this case affect the application of the rules of corporate entity and thus prevent recovery in this case. The consent of the Government to suit is conditioned on the establishment of facts as provided in the statute, and as stated above the statute evidences only an

794

intent to refund to the taxpayer, and not to he who may have borne the burden of the tax as a result of being charged the additional amount of the tax for processing. Paraphrasing the language of New Colonial Ice Co. v. Helvering, supra, had Congress intended the right of refund transferrable or assignable to a customer who suffered the burden of the increased cost imposed as a result of the tax, "It is but reasonable to believe that purpose would have been clearly expressed," and the answer to the contention made in that case that the transferring corporation became a single entity with the purchasing corporation and therefore the same taxpayer, likewise appears to be applicable here. The fact that one individual owned all of the stock in both corporations is not material. "As a general rule a corporation and its stockholders are deemed separate entities and this is true in respect of tax problems." New Colonial Ice Co. v. Helvering, supra.

■■ Thus in final analysis the plaintiff can rely only on its contention that it became entitled to the right of action which its assignor, the abattoir, had prior to the passage of the Revenue Act of 1936, and that it can not be deprived of such right without doing violence to provisions of the Fifth Amendment. This position does not appear meritorious. In essence, the right of action it acquired was one which was subject to the valid restriction imposed by Title 7 of the Revenue Act of 1936, supra, which, it is well established, was constitutional in all respects against the abattoir. Under the circumstances the abattoir in the light of Title 7, 7 U.S.C.A. §§ 623, 644 et seq., had no right of action not subject to divestiture, and one who purchases a right of action which is subject to be legally divested cannot assert in behalf of such assignor constitutional rights arising from its destruction. As stated above, the plaintiff having no relationship with the Government in the payment of any taxes, but only a contractual relation with the taxpayer, it acquired no rights by its purchase which in any manner enlarged the rights of refund which Congress had legally declared not to exist in favor of the abattoir. This is well illustrated by the mathematical fact that zero plus zero is still zero.

Plaintiff insists that the case of Interwoven Stocking Company v. United States, 52 F.Supp. 966, decided in the District Court of New Jersey, October 28, 1943, supports its contention here. That case is easily differentiated, for there both the subsidiary and the parent corporation, which later asserted the claim for refund, were "taxpayers" and both of them had paid taxes. Therefore the effect of the decision goes no further than a holding that the claim of the wholly-owned subsidiary could be transferred to the parent corporation so that it could enforce not only the claim of its subsidiary but also its own claim for taxes that it had paid. This points the difference, because in the present case the plaintiff paid no taxes.

For the reasons above stated it is concluded that the first and second counts of the complaint fail to show any ground for the relief prayed and should therefore be dismissed. The third count is sufficient as a pleading to withstand the motion to dismiss.

An order will be entered in accordance with this opinion.