## UPCHURCH PACKING CO., Inc., v. UNITED STATES.
### No. 11169.

Circuit Court of Appeals, Fifth Circuit.

Nov. 20, 1945.

Joseph B. Brennan, of Atlanta, Ga., for appellant.

Fred G. Rita and Sewall Key, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and M. Neil Andrews, U. S. Atty., and Harvey H. Tisinger, Asst. U. S. Atty., both of Atlanta, Ga., for appellee.

Before HUTCHESON, McCORD, and WALLER, Circuit Judges.

HUTCHESON, Circuit Judge.

As set out in the complaint, the suit was founded "upon the provisions of the Agricultural Adjustment Act of 1933, 48 Stat. 31 [7 U.S.C.A. § 601 et seq.], and Title VII of the Revenue Act of 1936 [7 U.S.C.A. § 644 et seq.] ".[1] It was for the refund of processing taxes paid not by plaintiff but by its subsidiary[2] on the slaughtering of hogs for plaintiff. Its claim that the facts alleged[3] entitled it, though it was not the

---

[1] These are the provisions of this Act significant here:

"Sec. 902. Conditions on allowance of refunds.

"No refund shall be made or allowed, in pursuance of court decisions or otherwise, of any amount paid by or collected from any claimant as tax under the Agricultural Adjustment Act, unless the claimant establishes to the satisfaction of the Commissioner in accordance with regulations prescribed by him, with the approval of the Secretary, or to the satisfaction of the trial court, or the Board of Review in cases provided for under section 906, as the case may be—

"(a) That he bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, (1) through inclusion of such amount by the claimant, or by any person directly or indirectly under his control, or having control over him, or subject to the same common control, in the price of any article with respect to which a tax was imposed under the provisions of such Act, or in the price of any article processed from any commodity with respect to which a tax was imposed under such Act, or in any charge or fee for services or processing; (2) through reduction of the price paid for any such commodity; or (3) in any manner whatsoever; and that no understanding or agreement, written or oral, exists whereby he may be relieved of the burden of such amount, be reimbursed therefor, or may shift the burden thereof; or

"(b) That he has repaid unconditionally such amount to his vendee (1) who bore the burden thereof, (2) who has not been relieved thereof nor reimbursed therefor, nor shifted such burden, directly or indirectly, and (3) who is not entitled to receive any reimbursement therefor from any other source, or to be relieved of such burden in any manner whatsoever." 7 U.S.C.A. § 644.

"Sec. 903. Filing of claims.

"No refund shall be made or allowed of any amount paid by or collected from any person as tax under this chapter unless, after June 22, 1936, and prior to July 1, 1937, a claim for refund has been filed by such person in accordance with regulations prescribed by the Commissioner with the approval of the Secretary. All evidence relied upon in support of such claim shall be clearly set forth under oath. The Commissioner is authorized to prescribe by regulations, with the approval of the Secretary, the number of claims which may be filed by any person with respect to the total amount paid by or collected from such person as tax under this chapter, and such regulations may require that claims for refund of processing taxes with respect to any commodity or group of commodities shall cover the entire period during which such person paid such processing taxes." 7 U.S.C.A. § 645.

[2] Atlanta Butchers Abattoir & Stock Yards Company.

[3] "(5) Plaintiff is, and for a number of years has been, engaged in the meat packing business which consists of the purchase, slaughter, and butchering of hogs, cattle, and sheep for sale.

"(6) Prior to December 28, 1935, plaintiff did not slaughter its own animals, but had this service performed for it by the Atlanta Butchers Abattoir & Stock Yards Company, hereinafter referred to as the Abattoir, a Georgia corporation, now dissolved, with principal place of business formerly at East Point, Georgia.

"(7) During the tax period and until the completion of the plan for reorganization hereinafter referred to, W. F. Upchurch, a resident of Fulton County, Georgia, was the President and sole

taxpayer, to maintain the suit was rejected by the district judge,[4] and from an adverse judgment on the pleadings, plaintiff has appealed.

Appellant is here insisting that having borne the burden of the tax, and later, in December, 1935, become merged with Abattoir, it then acquired a vested legal and equitable right to recover the taxes Abattoir had paid, and that Section 902 of the Act of 1936, imposing "conditions on allowance of refunds" did not, indeed could not, constitutionally take this right away.

Whatever may be said of that part of its contention that its claim for refund is not opposed to but is in accordance with Section 902(a) of the Act, it is quite clear that its constitutional point is not well taken. Suable only by its consent, the United States may place conditions and limitations upon that consent, and one who avails himself of it to sue the United States must bring and maintain his suit under the conditions and limitations imposed.[5] It may not at all be doubted that Sec. 902 as to the refunds it deals with limits and conditions the consent of the United States to be sued, nor that plaintiff may not in a suit brought on that consent contest the constitutionality of the conditions imposed. The Anniston case,[6] on which appellant seems to rely, is not at all in point. There the plaintiffs were proceeding, not under the Act against the United States, but despite the Act, which, in Sec. 910, freed him from liability, against the collector. Claiming that their actions against the collector could not be constitutionally taken away by substituting a limited right of action against the United States, they were met in the United States Circuit Court of Appeals [7] with the holding that the Congress could do just that, and in the Supreme Court with the holding that the Act had not taken from the taxpayers, but had left them with, the only substantial right they could claim, the right ex aequo et bono,[8] to get back the taxes they had paid the collector.

stockholder of the Plaintiff and of the Abattoir.

"(8) On December 28, 1935, in accordance with the Plan for Reorganization duly adopted by the stockholders of the Plaintiff and of the Abattoir, the Plaintiff, in consideration for 100 shares of its capital stock which it issued and delivered to the Abattoir, acquired all of the assets of the Abattoir of every character, both real and personal, tangible and intangible.

"(9) In accordance with the Plan for Reorganization duly adopted by the stockholders of the Plaintiff and of the Abattoir, the shares of stock of Plaintiff received by the Abattoir in consideration for the transfer of all assets to Plaintiff were distributed to stockholders of the Abattoir, and in exchange the Abattoir took up all of its capital stock from its stockholders.

"(10) The abattoir was dissolved by order of the Superior Court of Fulton County, Georgia, on December 29, 1936.

"(11) In accordance with regulations issued by the Secretary of Agriculture under the Agricultural Adjustment Act of 1933, the Abattoir paid to the Collector of Internal Revenue at Atlanta, Georgia, custom processing taxes upon the slaughtering of hogs for customers * * * $45,183.85.

"(12) The custom processing taxes for which refund is herein asked were illegally and unconstitutionally collected * * *.

"(13) Of the amounts paid by the Abattoir to the Collector of Internal Revenue as set out in paragraph 11 above, the following amount was paid by the Abattoir on account of the slaughtering of hogs for Plaintiff, $33,968.11.

"(14) The abattoir collected from Plaintiff all of the processing tax described in paragraph 13 above by adding the amount of the customary charge for slaughtering hogs.

* * * * * * *

"(21) Plaintiff bore the burden of a substantial portion of the custom processing tax imposed upon the slaughtering of its hogs and in no manner whatsoever has it shifted the burden or been relieved of the burden of this tax.

"(22) No understanding or agreement of any kind exists or has existed whereby Plaintiff may be relieved of the burden of the custom processing tax borne by it."

"(23) Plaintiff duly filed claims for refund and they were disallowed in whole or in part.

4 Upchurch Packing Co. v. United States, D.C., 53 F.Supp. 791.

5 Arabi Packing Co. v. Commissioner, 5 Cir., 109 F.2d 278; Oswald Jaeger v. Commissioner, 7 Cir., 108 F.2d 375.

6 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143.

7 5 Cir., 87 F.2d 773.

8 United States v. Jefferson, 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859; Anniston Mfg. Co. v. Davis, 301 U.S. at 348, 349, 57 S.Ct. 816, 81 L.Ed. 1143.

On the second branch of its argument that its suit is consistent with Section 902(a), appellant, pointing to the use in the section of the word "claimant", insists that though it is not the taxpayer, it "is the claimant", having acquired the taxpayer's right of action as a result of a corporate reorganization and having filed the claim for refund. It concedes, as indeed it must upon the authorities,[9] that ordinarily the taxpayer and the taxpayer alone is the claimant and that, if there had been no reorganization, and Abattoir, continuing its corporate existence, had sought to prosecute its claim without complying with Sec. 902(b), Sec. 902(a) would prevent its recovery. It insists, however, that since, if the reorganization and merger had not taken place, it might have qualified itself to sue under Sec. 902(b) by repaying plaintiff, the merger with plaintiff, though not constituting a legal payment and not in literal compliance with the section, brought plaintiff's case within its spirit. But it does not stop here. Urging upon us that it does not need to rely on compliance with Sec. 902(b), it insists that under the peculiar circumstances here pressed, it may be regarded as a claimant entitled under Sec. 902(a) to recover.

We think it quite plain that plaintiff can take no comfort from Sec. 902(b). We put to one side the difficulty in fitting 902(b) to this case arising from the fact that it speaks not of a processor for hire repaying the taxes its customer had paid to it as part of the costs of processing, but of a vendor repaying to its vendee, and that if they had desired to do so, plaintiff and its subsidiary could not have re-rigged the transaction to fit it under the statute. For the insuperable difficulty confronts plaintiff that taxation has to do with what was, rather than with what might have been, done, with actualities, not suppositions, and no attempt whatever has been made to comply with the section. On the contrary, the subsidiary, without doing anything to put itself in position to recover, folded up and quit.

We think it equally plain that appellant is not, within Section 902(a), a claimant entitled to recover. To begin with, appellant is not the taxpayer. To end with, it is to the taxpayer that the Government has given its consent to sue, and to the taxpayer alone. It is, therefore, quite clear that appellant cannot recover unless the peculiar circumstances, of which appellant makes so much, that the stockholders of the subsidiary taxpayer sold out to the parent company for stock in it and then dissolved taxpayer, have operated to make claimant and taxpayer legally and spiritually one.

Appellant, not contesting this, insists that this in effect is exactly what occurred: the claimant who bore the burden became the taxpayer, the taxpayer who had passed it on became the claimant who had borne it, with the result that, purged of sin and completely pure, the claimant taxpayer and taxpayer claimant, become one, can maintain the suit. In support of its view that it can, it cites and strongly relies on Interwoven Stocking Co. v. United States, 3 Cir., 144 F.2d 768. There, a parent corporation was engaged in the business of selling and distributing the product manufactured by its subsidiary, the processing tax was imposed on and paid by the subsidiary, which in turn passed the burden to the parent. Afterwards subsidiary and parent merged. It was held that the plaintiff, though not the taxpayer, was entitled to recover in its suit the processing taxes illegally collected from its subsidiary.

The Government insists that the facts in that case are different from those presented here. There, it says, the subsidiary was operating merely as the "manufacturing department of the integrated organization", and there was a real reorganization and merger of the two companies, while here Abattoir was not a department of claimant but was doing processing for a fee for others than it, and, further, there was no reorganization and merger here, but a mere transfer of assets by Abattoir followed by its dissolution. It insists further that the case was not well decided.

We agree with the Government that the facts of the two cases are not identical. But we agree with appellant that in substance the two cases are the same, and if we could agree with it that the case was well decided, we should agree with it that the judgment appealed from here should be reversed. But we are not satisfied with the result in that case, that a corporation who

9 Oswald Jaeger v. Commissioner, 7 Cir., 108 F.2d 375; Arabi Packing Co. v. Commissioner, 5 Cir., 109 F.2d 278; F & F Laboratories v. Commissioner, 7 Cir., 104 F.2d 563; Fuhrman & Forster Co. v. Commissioner, 7 Cir., 114 F.2d 863; Lindner Packing & Provision Co. v. Commissioner, 10 Cir., 118 F.2d 656.

had not paid the tax, but had merely borne the burden of it, is entitled to recover taxes it did not pay, nor with the reasoning that this is so because it was closely affiliated with the taxpayer, its subsidiary, and subsequently merged with it. Without expressly holding that separate corporate entities may be disregarded, indeed, apparently holding that they may not, the opinion seems to turn on the idea that by a kind of legal metapsychosis taxpayer and burden bearer have become one and that since tax refunds are granted on equitable principles, the statute must be construed and applied not as written but so as to give effect to the supposed equitable purpose of Congress, while preventing unjust enrichment, to allow anyone who bore the burden of the tax to sue for its refund. Thus, though neither subsidiary nor parent, before the merger, was a claimant entitled to suit, and taxpayer had no right of suit which it could transfer to the parent, from the merger of taxpayer and parent a right sprang which before the merger did not exist. It would, we think, hardly be claimed that two persons having individually no right to sue, could, by merging their businesses, acquire the right. If, in short, instead of being two corporations, taxpayer and burden bearer here were two individuals, we think nobody would claim that neither the individual taxpayer nor the individual burden bearer could sue, the burden bearer could acquire a right to sue by merely consolidating his business with that of the taxpayer. We see no reason for supposing that what two individuals cannot accomplish, two corporations can. The district judge was right. His judgment is affirmed.